UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:10-20337-CIV-GOLD/MCALILEY

ISRAEL PONCE,

        Plaintiff,

v.

BCA FINANCIAL SERVICES, INC.

        Defendant.
_____/

## DEFENDANT, BCA FINANCIAL SERVICES, INC.'S MOTION FOR SUMMARY JUDGMENT WITH SUPPORTING MEMORANDUM OF LAW

COMES NOW, the Defendant, BCA FINANCIAL SERVICES, INC. (hereinafter referred to as "BCA"), by and through its undersigned attorneys and pursuant to Rule 56, Federal Rules of Civil Procedure, hereby requests entry of Summary Judgment in its favor and against Plaintiff, ISRAEL PONCE (hereinafter referred to as "Plaintiff"), and as grounds therefore states:

### Motion for Summary Judgment

1.     Plaintiff brought this original action against Defendant, BCA asserting violations of the federal Fair Debt Collection Practices Act ("FDCPA") arising out of the collection communications on behalf of Skin and Cancer Associates. **[Dk. 12]**[1]

2.     Defendant denies all liability and damages as to the claims under the FDCPA which are currently alleged against it in Plaintiff's Complaint, and, recently amended Complaint, and further maintains the claims raised by the Plaintiff have no merit.

---

[1]Following the deposition of the Plaintiff and the exchange of initial discovery, Plaintiff filed an Amended Complaint to which some of the original allegations of liability under the FDCPA have been withdrawn and substituted by other allegations.

3.      Defendant is entitled to summary judgment as a matter of law since Plaintiff's claims that Defendant BCA violated the FDCPA are not supported by the material facts. Defendant contends there is no genuine issue of material fact to support said allegations and as a matter of law, BCA is entitled to judgment in its favor.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

BCA was retained by Skin and Cancer Associates to recover an amount allegedly due and owing by Plaintiff, Israel Ponce in the amount of $378.35 on November 5, 2008 **[See: Exhibit 1 Affidavit of Kathy Kinggard, BCA Financial Services];[Ex. 11]** On or about November 14, 2008, BCA, in accordance with the Section 1692g of the Fair Debt Collection Practices Act ("FDCPA") mailed the Plaintiff its initial communication located at 19308 N.E. 25th Avenue, Apartment 194, Aventura, Florida 33180 2008 **[Ex. 1]** Such letter was not returned to BCA as undeliverable nor was BCA informed prior to mailing such letter that the Plaintiff was not receiving mail at such address. 2008 **[Ex. 1]**

On September 23, 2009, BCA, by and through its collection representative, Iris Moreno, called the Plaintiff's resident telephone number in an attempt to collect a debt and was informed by an unidentified female[2] that the Plaintiff no longer resided at that number and BCA was provided with another telephone number within the 305 telephone area code. **[Ex. 1]**; **[Exhibit 2: Audio recording of telephone call between Iris Moreno and unidentified female identified as *firstcall.wav*]** This call was not an attempt to obtain location information (ie skip-tracing) under Section 1692b but a call to attempt to collect a debt as the telephone number was provided by the original creditor. **[Ex. 1]** Immediately following the call to the resident telephone number, BCA, by and through its collection representative, Iris Moreno, called the Plaintiff at the

---

[2] According to the deposition testimony of the Plaintiff, the unidentified female residing at the Plaintiff's residence was the Plaintiff's wife, Rosie Ponce. [Ex. 6, page 10]

alternative number, identifying herself as calling from BCA Financial and seeking a past due balance owed by the Plaintiff to Skin and Cancer Associates in an attempt to collect such a debt. **[Exhibit 3; Audio recording of call between Iris Moreno and Plaintiff identified as** *secondcall.wav*] During this telephone call, Plaintiff did not indicate that he did not receive a copy of BCA's initial collection letter, but orally requested a copy of the "bill" (i.e. verification). [Ex. 3]

Later that same day, Plaintiff called back to BCA and spoke with Arianne Mateo, who identified her name, the name of the business, all required disclosures, including providing the name of the previous collector, Iris, and well as provided the mailing address for payment to the Plaintiff. **[Exhibit 4; Audio recording of call between Plaintiff and Arianne Mateo identified as** *thirdcall.wav*] During that call, Plaintiff misrepresented that he needed the address of BCA in order to send in a payment and accordingly the account representative coded the account as a "payment promised" that stopped all letters in anticipation of said payment. **[See Exhibit 5 identified as collection notes dated September 23, 2009; Notes by AKM]** Instead of receiving payment as represented by the Plaintiff, BCA received a letter from the law firm of Weisberg & Meyers threatening suit on October 12, 2009 alleging that BCA's representative had identified themselves as the "IRS" despite the fact that Plaintiff had actual knowledge that the collection representative's name was Iris from the third telephone call. **[See Dk. 1 Plaintiff's Initial Complaint and Exhibit 6 Deposition Transcript of Israel Ponce, page 30]** The account was then placed in a cease communication status as requested by Plaintiff's counsel, Alex Weisberg. [See: Ex. 1 and 5]

According to the original creditor, the balance due by the Plaintiff was not subject to any insurance coverage entitlement. **[Exhibit 7: Affidavit of Corporate Representative and/or**

**Records Custodian of Skin and Cancer Associates];[Ex. 11]** To date, the balance remains unpaid and no insurance provider of the Plaintiff has agreed to pay the balance under any insurance indemnity agreement or policy. **[Ex. 1 and 7]** Therefore, Ms. Moreno's statement that insurance was not going to pay for the account balance was a true and accurate statement of fact. **[Exhibit 8: Deposition Transcript of Iris Moreno, page 23-25; Ex. 1 and 7]**

In the course of collections, BCA utilizes and maintains computer records which detail the collection activities account information received from its original creditor clients such as Skin and Cancer Associates and is in possession of the collection notes associated with Account Number 26294004 in the name of Israel Ponce. **[Ex. 1 and 5]** These collection notes serve as BCA's institutional (assigned account number) memory regarding the collection activities of its accounts and such records are kept in the ordinary course of business for BCA. **[Ex. 1 and 5]** BCA also maintains policies and procedures for handling of collection accounts in compliance with the Fair Debt Collection Practices Act. A copy of each relevant policy and procedure is incorporated in Exhibit 9 **[See: Exhibit 9 Policy and Procedures of BCA; Exhibit 10; Deposition Transcript of Kathy Kinggard, pages 33-40;41-52; and Ex. 1]**;

At all times material, BCA mails its initial communication required under Section 1692g to its debtors and has confirmed that the 1692g notice was mailed to the Plaintiff and the address provided by the original creditor without evidence or proof of a mail return of an incorrect address or undeliverable notice. **[See: Ex. 1, 5]; [Ex. 10, page 50-54]** At all material times hereto, the Israel Ponce maintained residence at 19308 N.E. 25th Avenue, Apartment 194, Aventura, Florida 33180. **[Ex. 1 and 5];[Ex. 6, page 9]**; BCA receives periodic reporting from Skin and Cancer Associates which update accounts with payment information and balance adjustments through a combination of electronic files and email notifications. **[Ex. 1 and 7]** Skin

and Cancer Associates further reviewed account records for Mr. Ponce's file which were maintained in the ordinary course of business and it is undisputed that prior to the account being referred for collections to BCA, Skin and Cancer Associates sought the collection of the past due balance and, further, that all opportunities to obtain payment from any insurance provider on behalf of Mr. Ponce had been attempted and/or exhausted prior to the referral of the matter to BCA. **[Ex. 7]** Skin and Cancer Associates, verified the accuracy of the account, and provided any updates on the accounts, with documentation of any payments on accounts and adjustments to balances to BCA. **[Ex. 7]** It is undisputed that to date, no insurance provider has submitted payment on behalf of Mr. Ponce for the medical services provided on March 26, 2008 and that the full balance is due and owing at this time. **[Ex. 1 and 7]** That Skin and Cancer Associates has confirmed that the account submitted to BCA for collection contained charges for either unpaid deductibles or co-payments, which are the responsibility of the patient to pay, and are not subject to insurance benefits or third party payments. **[Ex. 1 and 7]**

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### *Summary Judgment Standard*

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment *"shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."* In order to prevail on a motion for summary judgment, the moving party must demonstrate that no genuine issue of material fact exists and that judgment as a matter of law should be granted in the moving party's favor. Smith v. Hudson, 600 F.2d 60, 63 (6th Cir.1979). In considering a motion for summary judgment, the court must view all facts and inferences to be drawn therefrom in the

light most favorable to the non-moving party. Matshushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587-88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); SEC v. Blavin, 760 F.2d 706 (6th Cir.1985). Although the moving party has the burden of showing that no genuine issue of material fact exists, the non-moving party, however, may not merely rest on conclusory allegations contained in the complaint, but must respond with affirmative evidence supporting its claim and establishing the existence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); not every factual dispute between the parties will prevent summary judgment. The disputed facts must be material. They must be facts which, under the substantive law governing the issue, might affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The dispute must also be genuine. The facts must be such that, if they were proven at trial, a reasonable jury could return a verdict for the non-moving party. Id. The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence that makes it necessary to resolve the parties' differing versions of the dispute at trial. First National Bank v. Cities Service Co., 391 U.S. 253, 288-89 (1968).

## ARGUMENT IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
## WITH CITATIONS TO AUTHORITY

### I.

### Plaintiff's allegation that he failed to receive the 1692g notice is barred by the statute of limitations

It has been determined that the statute of limitations to bring an action under the FDCPA is one (1) year from the date of the alleged incident and that the FDCPA is not subject to the "discovery" rule. See: Mattson v. U.S. West Communications, 967 F.2d 259 (8th Cir. 1992) The court in Mattson, similarly addressed the issue of the statute of limitations under the FDCPA in

regards to the mailing of collection communications. *"An action to enforce any liability created by this subchapter may be brought in any appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, within one year from the date on which the violation occurs.*" 15 U.S.C. § 1692k(d). In Mattson, the Defendant moved for summary judgment on the ground that the complaint was filed more than one year from the dates on which the letters were mailed. The district court granted the motion and dismissed Mattson's complaint against both U.S. West and SIC with prejudice. The district court reasoned that the purpose of the Act was to eliminate abusive debt collection practices. It determined that since the debt collector's conduct in this case was complete on November 27, 1989, the statute of limitations began to run on that date and expired on November 26, 1990. Because the complaint was filed on November 27, 1990, the court held that it was without jurisdiction to consider the complaint. The court stated:

> We agree with the district court's interpretation of the FDCPA. While we understand that Congress' ultimate objective was to protect consumers from harassment by debt collectors, Congress intended to achieve this purpose by regulating the conduct of debt collectors. 15 U.S.C. § 1692(e) ("It is the purpose of this title to eliminate abusive debt collection practices...."); *see also id.,* § 1692d (A debt collector "may not engage in conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."). Once SIC placed the letters in the mail, its conduct with respect to any violation of the FDCPA was complete. The date on which SIC mailed the letters was its last opportunity to comply with the FDCPA, and the mailing of the letters, therefore, triggered section 1692k(d).

Mattson, 967 F.2d at 261

"The district court also reasoned that the date of mailing is a date which may be 'fixed by objective and visible standards,' one which is easy to determine, ascertainable by both parties, and may be easily applied. We agree that this is the better and more practical approach." Id.

In this case, as to Count I, it is undisputed from the records that BCA mailed its 1692g notice on November 14, 2008 which is more than one (1) year from the date of the filing of the lawsuit and therefore any assertion that Defendant failed to <u>mail</u> the Plaintiff with the required 1692g is not actionable and thus barred by the statute of limitations entitling BCA as judgment as to Count I as a matter of law.

### Defendant is entitled to summary judgment since it is undisputed that BCA mailed the Plaintiff its Section 1692g notice in compliance with the FDCPA

Second, BCA asserts that it is entitled to judgment as a matter of law as to Plaintiff's assertion that BCA violated Section 1692g by the Plaintiff's purported failure to receive the required Section 1692g notice under the FDCPA. This same argument was raised in the Ninth Circuit case <u>Mahon v. Credit Bureau of Placer County</u>, 171 F.3d 1197 (9th Cir. 1999). In <u>Mahon</u>, the court held that the FDCPA's validation of the debt notice provision requires only that the notice be "sent" and the debt collector need not establish actual receipt by the debtor. <u>Id</u>. at 1201

Defendant, BCA asserts that it is undisputed that its computer system has provided undisputed evidence that a 1692 letter was processed and mailed to the Plaintiff's at the address as verified as accurate by the original creditor, BCA, and in the Plaintiff's deposition testimony. It is well settled that a debt collector is not liable under the FDCPA based on the contention that the Plaintiff did not receive the required letter, but mere proof that the letter was mailed to a proper address established receipt as a matter of law under the well recognized "mail box" rule. *See*: <u>Mahon</u>, *supra*. Defendant, BCA has provided evidence through the affidavit statements of Kathy Kinggard, that the required 1692g letter were mailed to the Plaintiff's home address on or about November 14, 2008 without any returned mail or undeliverable notice. **[Ex. 1]** Oddly, Plaintiff stated that the address was his home address in which his wife, Rosie Ponce would regularly receive his mail. **[Ex. 6, Page 23-24]** Although, the "mail box" rule is a rebuttal

presumption, Plaintiff has undisputedly verified that the address used is accurate and therefore the mail was not returned to BCA as undeliverable. See: Anderson v. United States, 966 F.2d 487 (9th Cir. 1992) thus entitling BCA to judgment as a matter of law as to Count I of the Plaintiff's Amended Complaint.

Therefore, BCA respectfully requests that this court grant its motion for summary judgment and against the Plaintiff as it relates to the alleged violation under Section 1692g since it is undisputed that BCA mailed the required notice and as a matter of law, is entitled to the presumption of receipt by the Plaintiff under the often-recognized "mail-box" rule.

## II.

**Defendant is entitled to summary judgment since the audio recording clearly demonstrates that BCA's collection representative provided meaningful disclosure of the business name and debt collection purpose as required under Section 1692d(6) and Section 559.72(15) Fla. Stat.**

Plaintiff asserts in Counts II and V of the Amended Complaint that that Defendant violated the FDCPA and Florida's Consumer Collection Practices Act (FCCPA) for failing to provide "meaningful disclosure" and/or "adequate identification" during the collection communication. BCA has consolidated its argument since the evidence are nearly identical to support BCA's summary judgment as to these similar state and federal claims.

*Section 1692(d)6)*

First, Plaintiff seeks damages under the FDCPA for an alleged violation of Section 1692d(6) which states in pertinent part:

> A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> **(6)** Except as provided in Section 1692b of this title, the placement

of telephone calls <u>without meaningful disclosure of the caller's identity</u>.

In this case, Defendant was fortunate to have the actual audio recording of the conversation between Iris Moreno, collection representative of BCA, and the Plaintiff place on September 23, 2009, in this matter.[3] It is clear from the audio recording that Ms. Moreno clearly states, after confirming the proper identity of Mr. Ponce (the actual debtor) in compliance with the FDCPA, that *"I am calling from BCA Financial Services"…due to the medical nature of this phone call can you verify the year of your birth, please"* **[Dk. 15 Ex. 3[secondcall.wav]]** Section 1692b(6) does not specifically require the actual caller to identify herself by name but only to provide "meaningful disclosure" of the caller's identity to which the clear identification of the business' name as well as the other federal required disclosures. BCA asserts that the audio recording clearly demonstrates that the Plaintiff was provided with a meaningful disclosure of the caller's identity and thus is entitled to judgment as a matter of law as to Count II of Plaintiff's Amended Complaint.

<u>Section 559.72(15) Fla. Stat.</u>

In contrast to the federal Fair Debt Collection Practices Act, 15 U.S.C. Sections 1692e(11) and 1692d(6), the FCCPA does not require disclosure of identification information absent a request from the debtor. Section 559.72(15) <u>Fla</u>. <u>Stat</u>., specifically states that no person shall:

> (15)   Refuse to provide adequate identification of herself or himself or her or his employer or other entity, whom she or he represents when requested to do so by a debtor from whom she or he is collecting or attempting to collect a consumer debt.

---

[3] A copy of these audio recordings has been conventionally filed with this court on a CD-Rom containing the audio file this conversation for the court's review and consideration. **[See: Dk. 15]**

In addition, the FCCPA makes it a violation to:

> disclose to a person other than the debtor or her or his family information affecting the debtor's reputation, whether or not for credit worthiness, with knowledge or reason to know that the other person does not have a legitimate business need for the information.

See Section 559.72(5) Fla. Stat.

In this case, the audio recording between the Plaintiff and Ms. Moreno, the Plaintiff does not specifically ask the Ms. Moreno to identify herself by name. **[Dk. 15 Ex. 3]** However, it is clear that Ms. Moreno provided the Plaintiff with adequate identification of her employer as required by Section 559.72 (15) Fla. Stat. Further, Plaintiff later contacted BCA and spoke with an Arianne Mateo with BCA and during this particular in-bound call, the Plaintiff asked for the name of the collection representative who had previously spoke with him. **[Dk. 15 Ex. 4]** It is clear that during the telephone call that BCA's representative, Mateo did not "refuse" to provide the identification of Ms. Moreno and clearly disclosed voluntarily the name of the business and Ms. Moreno's name to the Plaintiff. **[Dk. 15 Ex. 4]**

Therefore, BCA respectfully requests that this court grant its motion for summary judgment and against the Plaintiff as it relates to the alleged violation of the FDCPA under Section 1692d(6) and Section 559.72(15) Fla. Stat. since the audio recordings clearly demonstrate that each of the BCA representatives identified the name of the business and the debt collection purpose of the call in full compliance with the FDCPA and FCCPA, and as a matter of law, is BCA entitled to judgment as a matter of law as to Counts II and V of the Amended Complaint.

## III.

## Defendant is entitled to summary judgment since there is no evidence that BCA's telephone call to Plaintiff's residence telephone number confirming or correcting location information rather than was for a debt collection purpose

Next, Plaintiff seeks damages against the BCA under Count III for allegedly failing to comply with Section 1692b(1) in its communication with an unidentified female who has been later identified by the Plaintiff as his wife. BCA asserts that its initial September 23, 2009 telephone call was not directed to an unknown third party in an effort to obtain location information (i.e. "skip-tracing") as required under Section 1692b(1) since the call recording clearly indicates that BCA was contacting the Plaintiff at his residential telephone number for purposes of debt collection and was provided an alternative telephone number voluntarily by a person later determined to be his wife. **[Dk. 15 Ex. 2];[Ex. 10, page 90]** As the communication was not governed by the disclosure requirements under Section 1692b(1), Ms. Moreno was not required to provide such a disclosure.

Therefore, BCA respectfully requests that this court grant its motion for summary judgment and against the Plaintiff as it relates to the alleged violation of the FDCPA under Section 1692b(1) since the telephone communication to the Plaintiff's resident telephone number was not for the purpose of "skip-tracing" but for an attempt to communicate with the debtor in an attempt to collect a debt, and as a matter of law, is BCA entitled to judgment as a matter of law.

## IV.

## Defendant is entitled to summary judgment since there is no genuine issue of material fact in dispute that BCA's representations as to the non-availability of insurance as a collateral source was accurate and not a violation of Section 1692e(10)

Finally, Plaintiff's Count IV asserts that Ms. Moreno's statement that insurance was no longer available to pay for the debt violated Section 1692e(10). However, it is undisputed that

Mr. Ponce's bill has not been paid by insurance nor is there any material fact in dispute that the representation is false and/or deceptive in any way.

The evidence in this case indicates that the original creditor has reviewed the file and have provided a sworn affidavit that they reviewed the account records on Mr. Ponce's file and have asserted that at the time that the past due balance was placed with BCA, the original creditor had sought the collection of the past due balance and that all opportunities to obtain payment from any insurance provider on behalf of Mr. Ponce had been attempted and/or exhausted prior to the referral of the matter to BCA. **[Ex. 7]** Also, the original creditor has stated that they have verified the accuracy of the account, and to date, no insurance provider has submitted payment on behalf of Mr. Ponce for the medical services provided on March 26, 2008 and that the full balance is due and owing at this time. **[Ex. 7]** Finally, Skin and Cancer Associates has affirmed that "any representation that insurance was not available to provide payment for Mr. Ponce regarding the services rendered on March 26, 2008 is an accurate statement of fact." Next, Ms. Moreno has testified that based on her experience, she based her statement regarding insurance availability on the length of time from the date of service (over one year old) that insurance was no longer available to pay for the underlying medical bill. **[Ex. 8, pages 23-26]** As such a statement has been determined to be true and accurate, Plaintiff's allegations under Count IV must be dismissed as a matter of law.

Therefore, BCA respectfully requests that this court grant its motion for summary judgment and against the Plaintiff as it relates to the alleged violation under Section 1692e(10), since it is undisputed that the underlying debt obligations were not subject to insurance coverage nor was insurance available to pay the underlying debt to constitute a viable misrepresentation under the FDCPA.

## VII.

### Defendant PCS is entitled summary judgment as to all counts under the FDCPA's "bona fide error" defense as PCS has demonstrated by undisputed evidence that any alleged actions were unintentional and occurred despite reasonable policies and procedures maintained by BCA to prevent such errors.

In the alternative, BCA also contends it is protected by the "bona fide error" defense under the FDCPA. In order to demonstrate its entitlement to judgment as a matter of a law under the FDCPA "bona fide error" defense found at 15 U.S.C. § 1692k(c), BCA must show by a preponderance of the evidence that: (1) the violation was unintentional and (2) occurred notwithstanding the maintenance of procedures reasonably adapted to avoid any such error. As to each alleged violation, BCA has demonstrated that it maintains reasonable policies and procedures in place to ensure that such violations do not occur. A copy of each and every policy governing these allegations are contained as Exhibit 9.

As discussed, a debt collector may rely on information provided by the creditor to support a "bona fide error" defense if it has reasonable procedures in place to prevent errors from occurring. Cook v. General Revenue Corporation, 2001 WL 893692 (E.D.Pa. 2001), citing Adams v. Law Offices of Stuckert & Yates, 926 F.Supp. 521, 529 (E.D.P.A. 1996) and Smith v. Transworld Sys. Inc., 953 F.2d 1025, 1032 (6th Cir. 1992). ")

BCA reasonably relied upon the information provided to it by the original creditor when it mailed the underlying collection communication. **[Ex. 1];** Further, BCA maintains sufficient policies and procedures governing the mailing of initial collection communications; the identification of its collectors when communicating with consumers **[Ex. 1];[Ex. 8, Page 13];[Ex. 10, page 92]**

Based on the foregoing, BCA asserts it is entitled to summary judgment as a matter of

law.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of the foregoing has been electronically filed on February 28, 2011, with the Clerk of the Court by using the CM/ECF system, which Notice will be electronically mailed to

        Alex D. Weisberg, Esq.
        WEISBERG & MEYERS, LLC,
        5722 S. Flamingo Road, Suite 656,
        Cooper City, Florida 33330;
        aweisberg@attorneysforconsumers.com.

        **/s/ Ernest H. Kohlmyer, III**
        Ernest H. Kohlmyer, III
        Florida Bar No. 0110108
        SOUTH MILHAUSEN, P.A.
        Gateway Center
        1000 Legion Place, Suite 1200
        Orlando, Florida 32801
        (407) 539-1638
        (407) 539-2679 (fax)
        skohlmyer@southmilhausen.com
        Attorneys for Defendant

# BCA FINANCIAL SERVICES

# MOTION FOR SUMMARY JUDGMENT

## DOCUMENT INDEX

EXHIBIT 1:     AFFIDAVIT OF KATHLEEN KINGGARD

EXHIBIT 2:     AUDIO RECORDING : IRIS MORENO TO ROSIE PONCE

EXHIBIT 3:     AUDIO RECORDING: IRIS MORENO TO ISRAEL PONCE

EXHIBIT 4:     AUDIO RECORDING: ISRAEL PONCE TO ANIANNE MATEO

EXHIBIT 5:     BCA COLLECTION NOTES

EXHIBIT 6:     DEPOSITION TRANSCRIPT OF ISRAEL PONCE

EXHIBIT 7:     AFFIDAVIT OF SKIN AND CANCER ASSOCITES

EXHIBIT 8:     DEPOSITION TRANSCRIPT OF IRIS MORENO

EXHIBIT 9:     BCA POLICIES AND PROCEDURES

EXHIBIT 10:    DEPOSITITION TRANSCRIPT OF KATHLEEN KINGGARD

EXHIBIT 11:    SKIN AND CANCER ACCOUNT REFERRAL NOTES