**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 10-cv-20337-GOLD**

ISRAEL PONCE,

      Plaintiff,

v.

BCA FINANCIAL SERVICE, INC.,

      Defendant.

_____/

## ORDER GRANTING PLAINTIFF'S SUMMARY JUDGMENT MOTION;
## DENYING DEFENDANT'S SUMMARY JUDGMENT MOTION

THIS CAUSE is before the Court on cross motions from the Parties for summary judgment. [ECF Nos. 16, 17]. Both Parties have filed responses in opposition to each others' motions. [ECF Nos. 23, 27]. Neither Party has filed a Reply in support of its Motion. Oral argument was scheduled for Friday, May 20, 2011. For the reasons set forth below, I find oral argument unnecessary and grant Plaintiff's Motion for Summary Judgment while denying Defendant's Motion for Summary Judgment.

### I.    BACKGROUND

The instant dispute arises under the Fair Debt Collection Practices Act (the "FDCPA"). 15 U.S.C. § 1692.[1] This Court may exercise subject-matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1331. Having reviewed the Parties' statements of facts filed in connection with their Motions for Summary

_____

[1] Plaintiff originally brought action under both the FDCPA and the Florida Consumer Collection Practices Act (the "FCCPA"). Fla. Stat. § 559.72. In his Opposition to Defendant's Motion, Plaintiff withdrew his claim under the FCCPA. [ECF No. 23, p. 11 n.3].

Judgment,[2] and the evidentiary materials submitted by both Parties, the following facts are not in dispute.

On March 26, 2008, Plaintiff obtained medical services from a dermatology center called Skin & Cancer Associates. [ECF No. 18, p. 1]. In the fall of the same year, Skin & Cancer Associates retained the services of the Defendant, a debt collection agency, to recover $378.35 from the Plaintiff. [ECF No. 16, p. 2]. Accordingly, Defendant mailed an initial communication to Plaintiff in Aventura, Florida on November 14, 2008. [*Id.*]. The letter was never returned to Defendant. [*Id.*]. On September 23, 2009, Defendant's agent, Iris Moreno, attempted to call Plaintiff. [*Id.*]. Plaintiff's ex-wife answered the phone, informed Ms. Moreno that the Plaintiff no longer lived at the Aventura address, and provided her with Plaintiff's new telephone number.[3]  The two women had the following brief exchange on the phone.

| | |
|---|---|
| Resident: | Hello? |
| Ms. Moreno: | Hi, can I speak to Israel? |
| Resident: | He's not here—he doesn't live here anymore.  Who is this? |
| Ms. Moreno: | Do you have a number where I can reach him? |
| Resident: | Who is this? |
| Ms. Moreno: | This is Iris.  Do you have a number where I can reach him? |
| Resident: | Um, hold on one sec.  Hold on.  Hold on one sec, okay?  Let me get it... Hello?  Who is this again? |
| Ms. Moreno: | This is Iris.  Do you have a number where I can reach him? |

---

[2] In the Southern District of Florida, a party moving for summary judgment must submit a statement of undisputed material facts. S.D. Fla. L.R. 7.5. The opposing party shall file a concise statement of material facts as to which there exists a genuine issue to be tried. *Id.* Each disputed and undisputed fact must be supported by specific evidence in the record, such as depositions, answers to interrogatories, admissions, and affidavits on file with the Court. *Id.* All facts set forth in the movant's motion, which are supported by evidence in the record, are deemed admitted unless controverted by the non-moving party. *Id.* Although the Parties in this case did file statements of materials facts, [ECF Nos. 16, 18, 28], Defendant did not comply with the Court's Scheduling Order [ECF No. 7, p. 6] in that it failed to delineate its material facts by number, and it failed to respond to Plaintiff's statement of facts by paragraph number. [ECF No. 23, p. 2 n.1].

[3] Plaintiff moved in February 2008, eventually settling in Atlanta Georgia in April 2009. [ECF No. 18, pp. 2–3].

2

[Ms. Moreno is provided with Plaintiff's new phone number].

[ECF No. 16-3].[4]

Immediately after that conversation, Ms. Moreno called Plaintiff and had

the following exchange with him:

| | |
|---|---|
| Plaintiff: | Hello? |
| Ms. Moreno: | Hello, can I speak to Israel? |
| Plaintiff: | That's me. |
| Ms. Moreno: | Hi, I'm calling from BCA Financial Services. |
| Plaintiff: | Um hm. |
| Ms. Moreno: | Due to the medical nature of this phone call, can you verify your year of birth for me please? |
| | [Plaintiff provides his birth date]. |
| Ms. Moreno: | Thank you. I do need to let you know that this call is being recorded for quality assurance. It's an attempt to collect a debt. Any information obtained will be used for that purpose. You have an outstanding balance from Skin & Cancer Associates in collections. How would you like to take care of that balance? |
| Plaintiff: | A balance from… from who? |
| Ms. Moreno: | Skin & Cancer Associates. |
| Plaintiff: | Skin and… What is that? What is Skin and Cancer? I don't have— |
| Ms. Moreno: | That's a dermatologist, sir. |
| Plaintiff: | A dermatologist? |
| Ms. Moreno: | Yeah, from 2008. That balance is pending in collections for $378. How would you like to take care of that balance? |
| Plaintiff: | I wasn't aware of such a debt. When—When did I get that bill? |
| Ms. Moreno: | Well, sir this is from March 26 of 2008. |
| Plaintiff: | Uh, I… I don't recall the debt though. That's the problem. When did I get that bill? |
| Ms. Moreno: | I just told you, sir the date of service. And after that— |
| Plaintiff: | And I have health insurance, so why wasn't health insurance paying my medical bills back then? |
| Ms. Moreno: | Well, sir we've mailed you out three letters letting you know that you were in collections and haven't had a reply to any of the letters. |
| Plaintiff: | Okay, I don't understand why I have a bill for that much. |
| | [pause] |

---

[4] Defendant has provided audio recordings of the relevant telephone conversations to the Court.

| Ms. Moreno: | Well, sir your insurance company will not go ahead and take care of this now. |
| Plaintiff: | They will not? |
| Ms. Moreno: | No. |
| Plaintiff: | Okay, I don't understand.  You're going to have to send me some documentation. |
| Ms. Moreno: | We've already done that sir, to [his previous address]. |
| Plaintiff: | I don't live there.  Okay, you need to get my new address. |
| Ms. Moreno: | What is your new address? |

[Plaintiff provides a new address in Atlanta, Georgia].

| Ms. Moreno: | Alright, sir.  I'll send it to you.  Thank you. |
| Plaintiff: | Also, if you could put what the bill is for, 'cause— |
| Ms. Moreno: | Alright, sir.  Thank you. |

[ECF No. 16-4].

Later that same day, Plaintiff called back to Defendant and spoke with another BCA representative. [ECF No. 16, p. 3]. During that call, Plaintiff asked for and obtained Defendant's address and the name of the individual representative (Ms. Moreno) who had called him on behalf of Defendant earlier that day. [ECF No. 16-4]. Several weeks later on October 12, 2009, Defendant received a letter in the mail from counsel for the Plaintiff.  To date, Plaintiff's balance remains unpaid, and no insurance provider has come forward to pay the balance. [ECF No. 16, p. 4].

Plaintiff filed this action against the Defendant in Florida state court. [ECF No. 1].[5]  Plaintiff alleges four counts of FDCPA violations, requesting for each count statutory damages of $1,000, actual damages, attorney fees and costs, and pre-judgment as well as post-judgment interest.  Defendant removed the action and asserts several affirmative defenses, two of which are relevant to the

---

[5] Defendant removed the case to this Court on February 3, 2010, pursuant to 28 U.S.C. § 1441. [ECF No. 1].  On July 12, 2010, Plaintiff filed an Amended Complaint. [ECF No. 12].

instant dispute—the statute of limitations defense and the "bona fide error" defense pursuant to 15 U.S.C. § 1692k.

## II. LEGAL STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure authorizes summary judgment when the pleadings and supporting materials show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it hinges on the substantive law at issue, and it might affect the outcome of the nonmoving party's claim. *See id.* ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). The Court's focus in reviewing a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 252; *Bishop v. Birmingham Police Dep't*, 361 F.3d 607, 609 (11th Cir. 2004).

The moving party bears the initial burden under Rule 56(c) of demonstrating the absence of a genuine issue of material fact. *Allen v. Tyson Foods, Inc.,* 121 F.3d 642, 646 (11th Cir. 1997). Once the moving party satisfies this burden, the burden shifts to the party opposing the motion to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Celotex v. Catrett,* 477 U.S. 317, 324 (1986). A factual dispute is genuine only if the evidence is such that a reasonable fact finder could return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 248; *Denney v. City of Albany*, 247

F.3d 1172, 1181 (11th Cir. 2001).  In assessing whether the movant has met its burden, the court should view the evidence in the light most favorable to the party opposing the motion and should resolve all reasonable doubts about the facts in favor of the nonmoving party.  *Denney,* 247 F.3d at 1181.

## III.   DISCUSSION

As a preliminary matter, there is no dispute between the Parties that, under the FDCPA, Plaintiff is a "consumer," Defendant is a "debt collector," and Plaintiff's alleged obligation is a "debt."  Plaintiff alleges four counts under 15 U.S.C. §§ 1692g, 1692d(6), 1692b(1), 1692e(10).  I will address the Parties' arguments as to each of these statutory provisions separately.

### a.   Notice Requirements Under § 1692g

The FDCPA requires that debt collectors comply with the following notice provision in sending their "initial communication" to a consumer:

> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
> - (1)   the amount of the debt;
> - (2)   the name of the creditor to whom the debt is owed;
> - (3)   a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
> - (4)   a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
> - (5)   a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a).

6

The Parties raise several separate issues relating to this subsection of the statute.

### i.      Statute of Limitations

First, Defendant argues that Plaintiff's claims under § 1692g fail to satisfy the FDCPA statute of limitations, which requires plaintiffs to bring action within one year of the relevant statutory violation.[6]  Defendant relies on the traditional "mailbox rule" and asserts that this Court must presume that the Plaintiff received its notice because the post office never returned the mail to Defendant.  Under that scenario, Plaintiff's § 1692g claim must be time-barred because Defendant's conduct was "complete" on November 14, 2008, and Plaintiff filed his Complaint more than one year after that date.  In support of its argument, Defendant cites *Mattson v. U.S. West Commc'n*, 967 F.2d 259, 261 (8th Cir. 1992) ("Once [the debt collector] placed the letters in the mail, its conduct with respect to any violation of the FDCPA was complete.")

This argument is premised on the assumption that Plaintiff actually received the notice mailed to him in Aventura, Florida in November 2008.  But in fact, Plaintiff notes—and Defendant does not dispute—that Plaintiff had *already moved from that address in February 2008*.  As such, Defendant's mailing is not covered by the mailbox rule, which requires that the mailer "properly" send the relevant piece of mail to the correct address.  *See Lightfoot v. United States*, 564 F.3d 625, 628 (3d Cir. 2009) (noting the "almost uniform[]" rule that "[m]ailing is not presenting; there must be receipt") (internal quotation marks omitted); *Hill v.*

---

[6] Defendant did not move to dismiss Plaintiff's claims on this basis.

*Jones*, 242 F. App'x 633, 635 n.6 (11th Cir. 2007) ("[A] pro se prisoner's act of misaddressing a court filing falls outside the umbrella of protection of the mailbox rule."); *Univ. Emergency Med. Found. v. Rapier Invs., Ltd.*, 197 F.3d 18, 23 (1st Cir. 1999) (determining that a party loses the benefit of the mailbox rule if it sent the document "to the wrong address and there was no delivery [to the intended recipient]"); *Drazan v. United States*, 762 F.2d 56, 58 (7th Cir. 1985) (same).

Considering that Defendant failed to properly send its notice to Plaintiff's correct address in November 2008, Defendant's conduct could not have been "complete" as of that date because it was not Defendant's "last opportunity to comply with the FDCPA." *Mattson*, 967 F.2d at 260, 261. To the contrary, Defendant's only opportunity to comply with § 1692g arose on September 23, 2009, when Ms. Moreno reached Plaintiff by phone and obtained his correct mailing address. Plaintiff filed his Complaint within five months after that call. Thus, Plaintiff's claim under § 1692g is not barred by the one-year FDCPA statute of limitations.[7]

### ii.    Defendant's Compliance with § 1692g

I now turn to the substance of Plaintiff's claims under § 1692g. As noted in the statutory text cited above, the FDCPA requires that debt collectors mail consumers a notice containing very specific language within five days of their initial communication. Defendant asserts that its action of simply placing a notice

---

[7] Several other inadequacies in Defendant's argument additionally preclude dismissing this count under the statute of limitations. Most importantly, even though Defendant's entire argument hinges upon the date of Plaintiff's Complaint, Defendant fails to state what that date was in its briefs. In addition, Defendant's Opposition to Plaintiff's Summary Judgment Motion on this issue is a verbatim "cut and paste" version of the same argument used in its own Summary Judgment Motion. [ECF No. 16, pp. 6–8; ECF No. 27, pp. 3–6].

to Plaintiff in the mail in November 2008 was in and of itself sufficient to comply with this requirement. [ECF No. 16, p. 8]. Defendant relies on *Mahon v. Credit Bureau of Placer County*, 171 F.3d 1197 (9th Cir. 1999), which held that "section 1692g(a) requires only that a Notice be 'sent' by a debt collector." *Id.* at 1201.

But *Mahon* does not control the outcome of this dispute. Not only is that case not binding on this Court, but it is also factually and legally distinguishable from this case. In particular, the debt collector in *Mahon* sent its initial notice to the consumers *at their home address where they had lived for 45 continuous years*. *Id.* at 1199, 1202. After the letter was never returned, the consumers simply asserted that they had never received the letter or any of the monthly statements from the debt collector over a period of two years. *Id.*

In contrast, it is undisputed here that Plaintiff had moved away from his previous address eight months before Defendant sent the relevant notice to that address. [ECF no. 23, p. 6]. Additionally, the *Mahon* court specifically relied on the common law mailbox rule as part of its reasoning, noting that under that rule "proper and timely mailing of a document raises a rebuttable presumption that it is received by the addressee." *Id.* at 1202 (quoting *Anderson v. United States*, 966 F.2d 487, 491 (9th Cir. 1992) (quotation marks omitted)). As set forth above, Defendant's November 2008 mailing is *not covered* by the mailbox rule because a mailing with the incorrect address does not constitute a "proper" mailing.

Besides Defendant's improper reliance on *Mahon*, Defendant's argument does not account for the statutory requirement that the § 1692g(a) notice be sent *within five days of the initial communication*. The record presented for my review

shows that Defendant communicated with Plaintiff for the first time when Ms. Moreno called Plaintiff by phone on September 23, 2009. [ECF No. 23, p. 9]. Thus, Defendant was required to send Plaintiff a notice in compliance with § 1692g(a) on or before September 28, 2009.[8]  Yet there is no evidence in the record that Defendant ever sent any written communication to Plaintiff at any time after September 23, 2009. [ECF No. 17, p. 14; ECF No. 18, pp. 3–4].

Considering all of these factors, it is apparent that Defendant violated § 1692g(a).  As the FDCPA is a strict liability statute, proof of one violation is sufficient to support summary judgment for the Plaintiff.  *See LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1190 (11th Cir. 2010) ("The FDCPA does not ordinarily require proof of intentional violation and, as a result, is described by some as a strict liability statute.") *Cacace v. Lucas*, 775 F. Supp. 502, 505–07 (D. Conn. 1990) (entering summary judgment for plaintiffs in FDCPA case where debt collector's letters did not disclose that they were an attempt to collect debt and overstated amount owed).

### iii.    Bona Fide Error Defense

Defendant alternatively argues that even if it would otherwise be liable for any of the FDCPA violations alleged by Plaintiff, it should be protected by the "bona fide error" defense established under the statute. The Eleventh Circuit has set forth the following test for this defense:

> A debt collector asserting the bona fide error defense must show by a preponderance of the evidence that its violation of the Act: (1) was not intentional; (2) was bona fide error; and (3) occurred despite the

---

[8] The statute exempts debt collectors from this requirement if the initial communication contained all of the necessary information or if the consumer paid the debt. 15 U.S.C. § 1692g(a). Neither of those exemptions applies in this case.

maintenance of procedures reasonably adapted to avoid any such error. The failure to meet any one of those three requirements is fatal to the defense.

*Edwards v. Niagara Credit Solutions, Inc.*, 584 F.3d 1350, 1352–53 (11th Cir. 2009) (citation omitted).

To justify the application of that defense to the facts in this case, Defendant simply submitted copies of certain legal policies it maintains without further comment. [ECF No. 16-9]. But if the bona fide error defense has "any meaning in the context of a strict liability statute, then a showing of 'procedures reasonably adapted to avoid any such error' must require more than a mere assertion to that effect. *The procedures themselves must be explained*, along with the manner in which they were adapted to avoid the error." *Reichert v. Nat'l Credit Sys., Inc.*, 531 F.3d 1002, 1007 (9th Cir. 2008) (emphasis added).

Defendant's submission of its general legal policies does not justify application of the bona fide error defense here. Absent any explanation from Defendant, it is unclear what the relevant errors even were. Nor is it evident why the errors were unintentional or bona fide or how Defendant adopted procedures to avoid such errors.[9] The Eleventh Circuit requires debt collectors *to affirmatively demonstrate each of these points by a preponderance of the evidence* in order to successfully invoke the bona error defense. Given Defendant's failure to meet any of the prongs of the test set forth above, Defendant is barred from invoking this defense.[10]

---

[9] Notably, Defendant's policies do not cover any issues related to consumer address-verification procedures or address-updating procedures. [ECF No. 16-9].

[10] To the extent that Defendant argues that its FDCPA violations were simply innocuous, this also fails the bona fide error defense test. *See Taylor v. Perrin, Landry, DeLaunay & Durand*, 103 F.3d 1232, 1239 (5th Cir. 1997) ("[T]he fact that violations were innocuous and not abusive may be considered only in mitigating liability, and not as defenses under the [FDCPA].").

Neither Party raises a dispute of material fact as to Plaintiff's claims under § 1692g(a). For all of the reasons set forth above, I grant Plaintiff's Motion for Summary Judgment as to § 1692g(a), and I deny Defendant's Motion for Summary Judgment as to the same.[11]

### b.    Meaningful Disclosure Under § 1692d(6)

Section 1692d of the FDCPA generally prohibits harassing, oppressive, or abusive "conduct," and subdivision (6) prohibits the "placement of telephone calls" without "meaningful disclosure of the caller's identity."    15 U.S.C. § 1692d(6). The only relevant "conduct" for purposes of this statutory subsection in this case occurred on September 23, 2009, when Ms. Moreno called Defendant and spoke with him directly. Plaintiff asserts that Ms. Moreno (and thus Defendant) violated § 1692d(6) during that call because she only introduced herself by saying "I'm calling from BCA Financial Services," but she did not specifically state her individual name.

As an initial matter, Plaintiff did not move for summary judgment as to his count concerning § 1692d(6), but Defendant did move for summary judgment on this count.    The Parties do not disagree about any factual aspect of the telephonic transcript between Ms. Moreno and Plaintiff on September 23, 2009, so their dispute boils down to a question of law for the Court—namely, whether Ms. Moreno sufficiently revealed her identity to Plaintiff during their telephone call so as to constitute "meaningful disclosure" under the FDCPA.

---

[11] Again, Defendant's briefing provides additional grounds for finding in Plaintiff's favor on this issue.  Specifically, Defendant's Opposition to Plaintiff's Summary Judgment Motion is taken verbatim from its own Summary Judgment Motion. [ECF No. 16, pp. 8–9; ECF No. 27, pp. 5–6].

Beyond recognizing that § 1692d(6) requires "meaningful disclosure," the Eleventh Circuit has not interpreted the meaning of this phrase any further. *See Edwards*, 584 F.3d at 1352 (merely noting that § 1692d(6) requires the meaningful disclosure of a debt collection caller's identity). This District has issued several orders determining that a debt collector must provide his or her individual name to a consumer for the disclosure to be considered "meaningful." *E.g.*, *Sclafani v. BC Serv., Inc.*, Case No. 10-61360, 2010 WL 4116471, at *2 (S.D. Fla. Oct. 18, 2010) ("[C]ourts have defined 'meaningful disclosure' to include disclosure of the caller's name . . . ."); *Valencia v. Affiliated Grp., Inc.*, Case No. 07-61381, 2008 WL 4372895, at *3 (S.D. Fla. Sept. 24, 2008) ("Courts construing Section 1692d(6) have uniformly held that it requires a debt collector to disclose the caller's name, the debt collection company's name, and the nature of the debt collector's business.") (quoting *Baker v. Allstate Fin. Serv., Inc.*, 554 F. Supp. 2d 945, 948 (D. Minn. 2008)). Other District Courts have arrived at the same conclusion. *E.g.*, *Glover v. Client Serv., Inc.*, Case No. 07-cv-81, 2007 WL 2902209, at *5 (W.D. Mich. Oct. 2, 2007) ("[T]he individual telephoning the debtor must state his or her name and capacity."); *Hosseinzadeh v. M.R.S. Assoc., Inc.*, 387 F. Supp. 2d 1104, 1112 (C.D. Cal. 2005) ("'[M]eaningful disclosure' presumably requires that the caller must state his or her name and capacity, and disclose enough information so as not to mislead the recipient.").

On the other hand, Defendant insists that Ms. Moreno's failure to state her own name is immaterial to the FDCPA's "meaningful disclosure" requirement.

Defendant cites several cases from other Districts recognizing that individual debt collectors may use fake or alias names with consumers and still remain in compliance with § 1692d(6). *E.g., Baker*, 554 F. Supp. at 950 & n.3 (D. Minn. 2008) ("Courts have generally held that a debt collector's use of an alias or 'desk name' comports with Section 1692d(6), provided the additional information that Section requires is also disclosed."); *Knoll v. Allied Interstate, Inc.*, 502 F. Supp. 2d 943, 946 (D. Minn. 2007) (determining that § 1692d(6) does not prohibit a debt collection agency employee from using an alias during a telephone call, as long as the employee accurately discloses the name of the debt collection agency and explains the nature of its business); *Wright v. Credit Bureau of Ga., Inc.*, 548 F. Supp. 591, 597 (N.D. Ga. 1982) ("The court agrees with the defendants that the use of a desk name is not a violation of this section."). *But see Savage v. NIC, Inc.*, Case No. 08-1780, 2009 WL 2259726, at *3 (D. Ariz. 2009) ("[M]eaningful disclosure requires more than merely disclosing an alias.").

Turning back to the undisputed facts in this case, Ms. Moreno made the following disclosures to the Plaintiff during their brief telephone call: she represented BCA Financial Services; the call was being recorded; and he had an outstanding debt from the dermatologist Skin & Cancer Associates, which dated back to March 2008. Beyond these disclosures, Ms. Moreno did not disclose her name or her capacity at BCA Financial Services. Even if she may have been permitted to introduce herself using an alias under the line of cases cited by Defendant, the fact remains that she did not introduce herself by *any name—alias or otherwise*. As such, the cases cited by Defendant are inapplicable.

14

Considering the remainder of the dialogue between Ms. Moreno and the Plaintiff, it would be difficult to say that Ms. Moreno disclosed any information to the Plaintiff in a meaningful way. While the Plaintiff asked her a barrage of questions during their brief conversation (about his health insurance, the identity of the creditor, and the date of the bill among other things), Ms. Moreno failed to alleviate much of his confusion, instead focusing on Plaintiff's outstanding balance and how he intended to settle that balance.

Given the undisputed facts in the record on this issue, I follow the previous cases from this District and hold that Defendant has not established "meaningful disclosure" as required by the FDCPA. Thus, I deny Defendant's Motion for Summary Judgment as to § 1692d(6).

### c.    Obtaining Location Information Under § 1692b(1)

The text of 15 U.S.C. § 1692b(1) provides the following:

> Any debt collector communicating with any person other than the consumer for the purpose of acquiring location information about the consumer shall—(1) identify himself, state that he is confirming or correcting location information concerning the consumer, and, only if expressly requested, identify his employer.

Similar to the issues discussed above concerning § 1692d(6), the Parties' disagreement as to § 1692b(1) relates to a single phone call, the transcript of which is factually undisputed. Specifically, the Parties focus on the call from Ms. Moreno to Plaintiff's ex-wife on September 23, 2009, and they have both moved for summary judgment as to whether Ms. Moreno satisfied the requirements of § 1692b(1) during that conversation as a matter of law. Defendant refutes Plaintiff's charges that it violated § 1692b(1) on the grounds that its representative made the call in an attempt to reach *Plaintiff himself*. In other

words, Defendant maintains that because Ms. Moreno was not intentionally "skip-tracing" or calling other people to track down Plaintiff's whereabouts, the phone call did not trigger the requirements of § 1692b(1). [ECF No. 16, p. 12].[12]

A review of the undisputed transcript disproves this theory. When Plaintiff's ex-wife picked up the phone, Ms. Moreno asked to speak with Plaintiff. [ECF No. 16-3]. As soon as his ex-wife said that Plaintiff no longer lived at that address, the second sentence from Ms. Moreno was "Do you have a number where I can reach him?" [ECF No. 16-3]. At that instant, Ms. Moreno became a "debt collector communicating with any person other than the consumer for the purpose of acquiring location information about the consumer" under § 1692b(1) and was accordingly required to "identify [her]self, state that [she was] confirming or correcting location information concerning the consumer, and, only if expressly requested, identify [her] employer." 15 U.S.C. § 1692b(1).

But as Ms. Moreno readily admitted during her deposition, she failed to state that she was confirming or correcting Plaintiff's location information as required by the statute. [ECF No. 17, p. 7; ECF No. 18, p. 6].[13] It still may have been evident to Plaintiff's ex-wife that Ms. Moreno was in fact seeking Plaintiff's location information, because she asked Plaintiff's ex-wife no less than three times, "Do you have a number where I can reach him?"

---

[12] A skip-tracing agency is defined as a "service that locates persons (such as delinquent debtors, missing heirs, witnesses, stockholders, bondholders, etc.) or missing assets (such as bank accounts)." BLACK'S LAW DICTIONARY 952 (8th ed. 2004).

[13] Ms. Moreno did identify herself by her first name during the call, and Plaintiff's ex-wife did not expressly ask Ms. Moreno to identify her employer, so she met the other requirements found in § 1692b(1).

Nonetheless, if Ms. Moreno had fully complied with the technical requirement of the statute, her complete disclosure about her intentions in calling probably would have addressed any lingering misunderstandings Plaintiff's ex-wife had about the call. *See Thomas v. Consumer Adjustment Co.*, 579 F. Supp. 2d 1290, (E.D. Mo. 2008) ("While the Court does not suggest that debt collectors must mimic, verbatim, the language of the statute, the caller here did not substantially comply with the requirements of § 1692b. One can easily see how communication of the information in § 1692b(1) would have alleviated the misunderstanding that both parties seem to acknowledge in their briefs occurred here.").

In any event, it is not the role of this Court to question the congressional rationale for direct and unambiguous statutory requirements such as this one. Keeping in mind that the FDCPA is a strict liability statute, see *LeBlanc*, 601 F.3d at 1190, and that the factual record contains no discrepancies,[14] I can only conclude that Defendant violated § 1692b(1).

Defendant raises the bona fide error defense as to this count just as it did in relation to § 1692g addressed above. Because Defendant failed to provide any further justification or explanation for applying that defense as to this particular point, I refer back to my previous analysis and once again reject

---

[14] In opposing Plaintiff's Summary Judgment Motion, Defendant argues that "there is at least a genuine issue of fact in dispute as to whether the communication is a violation of Section [1692b(1)] as to the purpose of the call." [ECF No. 27, p. 7]. The transcript does not support this argument. In particular, the only things Ms. Moreno even said during the entire call were her name, a request to speak with Plaintiff, and three consecutive demands for Plaintiff's new telephone number. Viewing these facts in the light most favorable to Defendant, no jury could possibly conclude anything other than that Defendant's entire purpose during the call was to obtain Plaintiff's location information. Thus, there are no material disputes of fact on this point.

Defendant's arguments concerning the bona fide error defense. For all of these reasons, I hold that Plaintiff's Summary Judgment Motion as to § 1692b(1) must be granted and Defendant's Summary Judgment Motion must be denied.

### d.     False or Misleading Representations Under § 1692e(10)

Plaintiff's claim concerning misleading representations focuses on the following statutory prohibition:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . . (1) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

15 U.S.C. § 1692e(10).

As with the other issues already discussed, the factual record on this issue revolves around the undisputed transcript of one telephone call, leaving a question of law for the Court to decide. In short, the Parties present the question whether Ms. Moreno used false, deceptive, or misleading methods to collect Plaintiff's debt during the following telephone exchange she had with Plaintiff on September 23, 2009:

| Plaintiff: | And I have health insurance, so why wasn't health insurance paying my medical bills back then? |
|---|---|
| Ms. Moreno: | Well, sir we've mailed you out three letters letting you know that you were in collections and haven't had a reply to any of the letters. |
| Plaintiff: | Okay, I don't understand why I have a bill for that much. |
| | [pause] |
| Ms. Moreno: | Well, sir your insurance company will not go ahead and take care of this now. |
| Plaintiff: | They will not? |
| Ms. Moreno: | No. |

[ECF No. 16-3].

18

Plaintiff's § 1692e(10) allegations of deception are based on Ms. Moreno's subsequent concession that at the time of the phone call she had no specific information about the insurance company's willingness to cover Plaintiff's medical services. Specifically, she admitted the following during her deposition:

> Q.   Now when Mr. Ponce asked you about insurance, you told him that his insurance company would not take care of this. What were you basing that statement?
> A.   On what I had in front of me on the screen at that time.
> Q.   Do you remember specifically what you had in front of you?
> A.   The date of service was what made me say that.
>        . . .
> Q.   When you say "date of service," what does that mean?
> A.   The date he actually went into my client's office.
> Q.   So now that date of service, you said that's what you were basing the statement on; that the insurance company wouldn't take care of his debt?
> A.   Correct.
> Q.   Tell me how you were able to obtain that information by the date of service.
> A.   Because it was past what we call "timing filing."
> Q.   And what does that mean?
> A.   That it was over a year old.
> Q.   *Did you have any specific information when you spoke to Mr. Ponce about any claims that may have been made to his insurance company?*
> A.   *That I looked at the moment, no.*
> Q.   Did you know when you made the call to Mr. Ponce whether there were any claims to his insurance company for this bill?
> A.   Normally, they are done.
> Q.   *But did you know specifically that there were claims made in this case when you spoke to him?*
> A.   *No.*

[ECF No. 18, pp. 8–9 (emphasis added)].

Before analyzing the merits of Plaintiff's claims, I first review the relevant standard under binding case law. The seminal Eleventh Circuit decision on point is *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168 (11th Cir. 1985), in which the court adopted the FTC Act standards for lawsuits brought under the FDCPA. In

particular, the Eleventh Circuit held that the FTC's "least sophisticated consumer" standard should also apply to FDCPA claims.

> [The FDCPA, like the FTC Act,] was not made for the protection of experts, but for the public—that vast multitude which includes the ignorant, the unthinking, and the credulous; and the fact that a false statement may be obviously false to those who are trained and experienced does not change its character, nor take away its power to deceive others less experienced.

*Id.* at 1172–73 (citation and internal quotation marks omitted).

Defendant asserts that Ms. Moreno's statement to Plaintiff (that his insurance would not cover his outstanding bill) could not have deceived the "least sophisticated consumer" or any consumer because it was true. Even though Moreno did not have the insurance information available at the time of the phone call, it is undisputed that no insurance company has ever come forward to pay Plaintiff's bill, and the original creditor has even provided a sworn affidavit that it exhausted all opportunities to obtain payment from any insurance provider before it ever referred the matter to Defendant. [ECF No. 16, p. 13].[15]

But case law provides that debt collectors who convey literal truths, partial truths, or ambiguous statements to consumers may still be in violation of the FDCPA. *See McMillan v. Collection Prof'l, Inc.*, 455 F.3d 754, 761 (7th Cir. 2006) ("Although this statement may be literally true, in some cases the literal truth may convey a misleading impression that violates § 1692e."); *Bailey Employment Sys. v. Hahn*, 545 F. Supp. 62, 67 ( D. Conn. 1982) ("[A] statement which is literally true may, nonetheless, be unlawfully deceptive."). This is

---

[15] While Plaintiff has always disputed his responsibility to pay the underlying charges from Skin & Cancer Associates, he comes forward with no evidence that an insurance company ever agreed to cover the bills.  [ECF No. 23, p. 16].

because Congress passed the FDCPA in order to "arm[] consumers with a shield against the overly zealous debt collector" and to prevent the "many cunning ways [debt collectors may try] to circumvent [the FDCPA] under cover of technical compliance." *Russell v. Equifax A.R.S.*, 74 F.3d 30, 32 (2d Cir. 1996).

To truly pass muster under § 1692e, a debt collector's statement must not only be true, it must also avoid ambiguity and unnecessary bullying or intimidation. *Id.* ("[A] collection notice is deceptive when it can be reasonably read to have two or more different meanings, one of which is inaccurate."); *Forsberg v. Fidelity Nat'l Credit Serv. Ltd.*, Case No. 03-cv-2193, 2004 WL 3510771, at *6 (S.D. Cal. Feb. 26, 2004) (suggesting that defendant debt collector's "bluffing" in an "attempt to pressure and intimidate plaintiff" would constitute a violation of § 1692e(10)); *Cacace*, 775 F. Supp. at 506 (entering summary judgment for plaintiffs in FDCPA case under § 1692e where debt collector inaccurately threatened that if it brought action against plaintiffs, then the commencement of litigation would automatically cause attachment of plaintiff's property); *Rosa v. Gaynor*, 784 F. Supp. 1, 4 (D. Conn. 1989) (holding that a letter that created a "false sense of urgency" and listed "intimidating" and "bullying" remedies was unlawfully deceptive).

Returning to facts here, Defendant's employee conceded that when she told Plaintiff "Well, sir your insurance company will not go ahead and take care of this now," she had no actual insurance information on hand to support that statement. [ECF No. 18, p. 9]. What she did have—according to Defendant— was enough *general experience* in her job to safely assume that his insurance

21

was probably no longer available to pay the underlying medical bill because it had been more than one year since the date of Plaintiff's medical service. [ECF No. 16, p. 13]. This position does not comport with common sense. Adopting it would permit Defendant to summarily obtain $378.35 from the Plaintiff based on nothing more than an assumption that happened to be correct.

More importantly, Ms. Moreno's statements to Plaintiff demonstrate exactly the type of manipulation that the Eleventh Circuit sought to prohibit when it adopted the least sophisticated consumer test.  Viewing the undisputed telephonic transcript in question, I can only conclude that Ms. Moreno told Plaintiff that his insurance company would not cover his bills in order to coax him into making a payment.  Rather than field his many questions or alleviate his obvious confusion about the underlying charges and the insurance company's refusal to pay them, Ms. Moreno simply invented a reason to terminate the conversation and disguised it as personal knowledge: "Well, sir your insurance company will not go ahead and take care of this now."  Viewing this evidence in the light most favorable to Defendant and taking all factual inferences in its favor, I find that Ms. Moreno's statement would be deceptive to almost any consumer and it would certainly mislead the most ignorant, unthinking, and credulous portion of the population described by the Eleventh Circuit in *Jeter*.

As for Defendant's renewed request to invoke the bona fide error defense, I once again refer to my analysis above and reject Defendant's position for failing to adequately brief the issue let alone meet the relevant burden of proof.  For all

of these reasons, I grant Plaintiff's Summary Judgment Motion as to § 1692e(10) and deny Defendant's Summary Judgment Motion.[16]

    Accordingly, it is hereby **ORDERED AND ADJUDGED** that

1.    Defendant's Motion for Summary Judgment [ECF No. 16] as to all counts in Plaintiff's Complaint is **DENIED**.

2.    Plaintiff's Motion for Partial Summary Judgment [ECF No. 17] as to counts 1, 3, and 4 of his Complaint is **GRANTED**.

3.    Defendant is hereby placed on notice that even though Plaintiff did not move for summary judgment as to count 2 of its Complaint concerning § 1692d(6), the undisputed evidence before this Court warrants *sua sponte* summary judgment in favor of Plaintiff.[17]  If Defendant opposes summary judgment in favor of Plaintiff on count 2, it shall file a short submission with this Court of 10 pages or less on or before **Friday, June 10, 2011**, in which it shall explain why

---

[16] Defendant's opposition to Plaintiff's Summary Judgment Motion on this issue provides additional grounds for granting Plaintiff's motion.  In the relevant heading within its opposition brief, Defendant argues that "there is _no_ genuine issue of material fact in dispute" as to this count. [ECF No. 27, p. 8 (emphasis added)].  Defendant's arguments are also completely unresponsive to Plaintiff's motion—instead of addressing the key issue (*i.e.*, whether Ms. Moreno's statement was misleading), Defendant repeatedly harped on an immaterial issue (*i.e.*, that no insurance provider has actually paid for Plaintiff's treatment). Additionally, Defendant failed to cite a single case in support of its position, and Defendant argued that Plaintiff's decision to even bring this count "nearly warrant[s] the imposition of sanctions."  [ECF No. 27, p. 8].  Counsel for the Defendant is advised to perform its legal research more carefully in the future before suggesting that opposing counsel has asserted a frivolous argument.  As in the debt collection context, bullying and intimidation tactics have no place among lawyers practicing before this Court.

[17] *Celotex Corp. v. Catrett*, 477 U.S. 317, (1986) ("[D]istrict courts are widely acknowledged to possess the power to enter summary judgments *sua sponte*, so long as the losing party was on notice that she had to come forward with all of her evidence."); *Byars v. Coca–Cola Co.*, 517 F.3d 1256, 1264 (11th Cir. 2008) ("Although a court may *sua sponte* grant summary judgment on a claim not presented in a summary judgment motion, the court is required to give notice to the parties that it intends to address the claim on summary judgment.").

the factual record is incomplete or disputed as to that count.[18] Defendant's failure to file a submission will result in an entry of judgment in favor of the Plaintiff.

4.    Plaintiff shall file a short submission to this Court of 10 pages or less on or before **Friday, June 17, 2011**, setting forth the exact amounts he requests for damages, attorney fees and costs, and any response to Defendant's June 10 submission.

5.    Defendant may file any opposition to Plaintiff's request for damages, fees, and costs on or before **Friday, June 24, 2011**.

6.    Should the Parties come to a mutual understanding about the outstanding issues before this Court in light of this Order, they are encouraged to enter into a settlement agreement and file a Joint Stipulation of Voluntary Dismissal pursuant to Rule 41(a)(1)(A)(ii).

**DONE AND ORDERED** in Chambers at Miami, Florida, this 24 day of May, 2011.

THE HONORABLE ALAN S. GOLD
UNITED STATES DISTRICT JUDGE

cc:
All counsel of record
U.S. Magistrate Judge Jonathan Goodman

---

[18] *Artistic Entm't, Inc. v. City of Warner Robins*, 331 F.3d 1196, 1201, 1202 (11th Cir. 2003) ("We have, however, distinguished between *sua sponte* grants of summary judgment in cases involving purely legal questions based on complete evidentiary records, and cases involving factual disputes where the non-moving party has not been afforded an adequate opportunity to develop the record. . . . [S]ummary judgment should be granted *sua sponte* only in those circumstances in which the dismissed claims have been fully developed in the evidentiary record and the non-moving party has received adequate notice.").